J-A21041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

JOHN J. COGGINS, DAVE T. BERNARD, : IN THE SUPERIOR COURT OF
CHANDLER HORTON, DONALD P. : PENNSYLVANIA
McGARVIE & JOHN A. VANTINE, :
:
Appellants :
:
v. :
:
KEYSTONE FOODS, LLC : No. 3814 EDA 2015

Appeal from the Order entered December 4, 2015
in the Court of Common Pleas of Montgomery County,
Civil Division, No(s): 2014-34080

BEFORE:  BENDER, P.J.E., DUBOW and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:           **FILED NOVEMBER 10, 2016**

John J. Coggins ("Coggins"), Dave T. Bernard ("Bernard"), Chandler

Horton ("Horton"), Donald P. McGarvie ("McGarvie"), and John A. Vantine

("Vantine") (collectively "Plaintiffs") appeal from the Order granting the

Motion for Judgment on the Pleadings filed by Keystone Foods, LLC

("Keystone").  We reverse and remand for further proceedings.

The trial court set forth the relevant factual and procedural history

underlying this appeal as follows:

> Plaintiffs are former employees of [Keystone], a global
> food stores company.  During Plaintiffs' employment, [Keystone]
> entered into a written retirement agreement with [Coggins,
> Bernard, Horton and Vantine] … in 2011.  Additionally, []
> McGarvie entered into an Agreement and Release with

[Keystone] upon his retirement.[1] [The] Retirement Agreement[s] … contained the following clause [(hereinafter referred to as "the medical benefits provision")]:

**<u>MEDICAL BENEFITS</u>**

(a) Keystone also agrees to maintain the existing health care benefits, including medical, prescription, dental and vision and the existing Medical Reimbursement Plan, for Employee and qualified dependents for life.

At the time of the execution of the Retirement Agreements in 2011, while each Plaintiff was still employed by [Keystone], each Plaintiff received [from Keystone] all of their health care benefits, including [insurance premiums,] prescription, dental and vision and all co[-]pays[,] at no cost. Each Plaintiff has since retired from employment with [Keystone, and all have satisfied the age and service requirements necessary to receive the health care benefits described above].

On June 2, 2014, [Keystone] sent each Plaintiff a letter ("Notice Letters") informing them that, as of January 1, 2015, they were required to pay a portion of the health care premium as well as any copays. On December 30, 2014, Plaintiffs filed a [C]omplaint alleging that [Keystone's] failure to provide health care benefits for life at no cost to Plaintiffs constituted a breach of the Retirement Agreements (Count I)[,] and violated the Pennsylvania Wage Payment Collection Law 43 P.S. § 260.1 *et seq.* ("WPCL") (Count II). On February 2, 2015, [Keystone] removed this action to the United States District Court for the Eastern District of Pennsylvania[,] … claiming [that t]he Employee Retirement Income Security Act of 1974 ("ERISA" [or "the Act"]) Section[s] 502(a)[FN 1] preempted the state action.

[FN 1] []There are two distinct types of preemption under ERISA. The first, referred to as ordinary preemption, is asserted under Section 514(a) of the Act, and provides the defendant with a federal defense to the plaintiff's

---

[1] The Agreement and Release is substantially similar to the retirement agreements executed by Coggins, Bernard, Horton and Vantine. We will hereinafter collectively refer to all of these agreements as "the Retirement Agreements."

state law cause of action, which, if established, requires its dismissal. 29 U.S.C. § 1144(a);[2] **Wood v. Prudential Ins. Co. of America**, 207 F.3d 674, 682 (3d Cir. 2000). The second, referred to as complete preemption, is asserted under Section 502(a), which is the Act's civil enforcement and remedies section. 29 U.S.C. § 1132(a); **Metropolitan Life Ins. Co. v. Taylor**, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L.Ed.2d 55 (1987). When applicable, complete preemption converts an ordinary state common law claim into one stating an ERISA claim, even though an ERISA claim is not alleged on the face of the complaint. Complete ERISA preemption gives a district court federal question jurisdiction and subjects the claim to removal. **Id.**[; **see also**] **Barnett** [], 38 A.3d [at] 77[7], n.7 []. Th[e instant] appeal raises only the question of ordinary preemption under Section 514(a) of ERISA.

[The federal district court] found [that] ERISA Section 502(a) did not apply and remanded the case back to the Montgomery County Court of Common Pleas on July 8, 2015. [**See Coggins**, 111 F. Supp. 3d 630.] [The federal district court] did not, however, decide whether the matter was preempted by ERISA Section 514(a)[, which is the matter at issue in the instant appeal].

---

[2] Section 514(a), which is codified in a separate provision of ERISA, provides, in relevant part, as follows: "[T]he provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter **relate to** *any employee benefit plan* described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C.A. § 1144(a) (emphasis added); **see also Coggins v. Keystone Foods, LLC**, 111 F. Supp. 3d 630, 634 n.2 (E.D. Pa. 2015) (stating that "[w]hen ERISA was enacted in 1974, the Act was codified in Title 29 of the U.S. Code. However, the section numbers in the original Act were codified under different numbers in the Code. Many opinions subsequent to 1974 use the original numbering found in the Act."). Our Pennsylvania Supreme Court has observed that "[g]iven its text, the [United States Supreme] Court has long acknowledged that Section 514(a) is "conspicuous for its breadth," "broadly worded," and "clearly expansive." **Barnett v. SKF USA, Inc.**, 38 A.3d 770, 777 (Pa. 2012) (quoting **California Div. of Labor Standards Enforcement v. Dillingham Const. N.A., Inc.**, 519 U.S. 316, 324, 117 S. Ct. 832, 136 L. Ed. 2d 791 (1997)).

On July 14, 2015, [Keystone] filed its [A]nswer and [N]ew [M]atter, which denied that the Retirement Agreements promised Plaintiffs' health care benefits for life **at no cost**. [Keystone] asserted that a modification provision in [the Keystone] health care benefits plan [(hereinafter "the Benefits Plan")] was incorporated in[to] the Retirement Agreement[s,] which allowed [Keystone] to modify the benefits and costs of said plan.[3] [Keystone] further asserted that Plaintiffs' claims were preempted by ERISA Section 514(a). Plaintiffs replied to [Keystone's N]ew [M]atter and denied ERISA preemption. On August 28, 2015, [Keystone] filed a [M]otion for [J]udgment on the [P]leadings[,] which argued both counts contained in Plaintiff[s'] [C]omplaint are preempted by ERISA Section 514(a). Plaintiffs responded to [Keystone's] [M]otion on September 28, 2015. Oral argument was held … on November 19, 2015. On December [4], 2015, the [trial] court entered an [O]rder granting [Keystone's] Motion for Judgment on the Pleadings. On December 18, 2015, Plaintiffs filed a [timely] Notice of Appeal to the Superior Court. On December 22, 2015, the [trial] court ordered Plaintiffs to file a concise statement of errors complained of on appeal … pursuant to Pa.R.A.P. 1925(b). Plaintiffs timely filed their Concise Statement[.]

Trial Court Opinion, 2/12/16, at 1-3 (footnote and emphasis in original, some footnotes omitted; footnotes added).

On appeal, Plaintiffs present the following issues for our review:

1. Did the [trial c]ourt commit legal error by granting [Keystone's] Motion for Judgment on the Pleadings?

2. Did the [trial c]ourt commit legal error by granting Keystone's [M]otion [for Judgment on the Pleadings] without allowing [Plaintiffs] to develop a complete factual record?

---

[3] **See** Motion for Judgment on the Pleadings, 4/28/15, ¶ 18 (wherein Keystone alleged that "Keystone, as the administrator of the [] Benefits Plan, whose terms are referred to and incorporated within the terms of the[] Retirement Agreements, has the right to modify the costs and payments required of its participants, as well as any [] Benefits Plan terms. (**See**, **e.g.**, Answer, Ex. D-1 at VI(A), p. 10-11; **see also** Answer, Ex. D-2 at 7.1.B.1, p. 26 and 11.1, p. 49)."

3. Did the [trial c]ourt commit legal error in determining that ERISA preempted [Plaintiffs'] claims because Keystone purportedly retained[,] in [the B]enefit[s P]lan documents[,] certain "modification rights?"

Brief for Appellants at 4. We will address Plaintiffs' claims simultaneously, as they all concern whether the trial court erred in determining that Plaintiffs' claims were preempted by Section 514(a) of ERISA.

Our standard of review is as follows:

Entry of judgment on the pleadings is permitted under Pennsylvania Rule of Civil Procedure 1034, which provides that "after the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa.R.C.P. 1034(a). A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law.

Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well[-]pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise.

*Coleman v. Duane Morris, LLP*, 58 A.3d 833, 836 (Pa. Super. 2012) (citations omitted).

"Federal preemption is a jurisdictional matter for a state court because it challenges subject matter jurisdiction and the competence of the state

- 5 -

court to reach the merits of the claims raised." ***NASDAQ OMX PHLX, Inc.***

***v. Pennmont Secs.***, 52 A.3d 296, 315 (Pa. Super. 2012) (citation and

brackets omitted).

> [I]n any preemption case, in determining whether a state law is preempted by federal law under the Supremacy Clause of the United States Constitution, we adhere, as we must, to the principles the United States Supreme Court has articulated. ***See Dooner v. DiDonato***, 601 Pa. 209, 218, 971 A.2d 1187, 1193 (2009) (citing U.S. Const. art. VI, cl. 2). The high Court has repeatedly stated that federal preemption of state law turns on the intention of Congress and begins with the presumption that Congress does not intend to supplant state law. ***See***, ***e.g.***, ***New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.***, 514 U.S. 645, 654, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995).

***Barnett***, 38 A.3d at 776.

Initially, we set forth the trial court's rationale advanced in its Opinion

for determining that Plaintiffs' claims were preempted by Section 514(a):

> The [Benefits Plan] … clearly falls under [the] purview of the ERISA statute and therefore relates to an ERISA concern. ***See*** 29 U.S.C. § 1003(a) (stating that ERISA applies to "any employee benefit plan if it is established or maintained … by any employer engaged in commerce."). **In order to address the merits of Plaintiffs' claims, the court would have to analyze and interpret the Benefit[s] Plan**. In ***Menkes v. Prudential Ins. Co. of Am.***, 762 F.3d 285 (3d Cir. 2014), the Third Circuit held that ERISA preempted a number of claims [that] required the court to interpret the subject employee benefit plan, one of which was breach of contract.
>
> In ***Barnett***, [***supra***,] the employees sought to enforce[, via a breach of contract claim,] an alleged [oral] promise that gave [them] rights and benefits (early retirement with full pension) arising from their ERISA benefits plan. There, the Pennsylvania Supreme Court held "if [the employees'] suit were allowed to proceed and they secured the retirement rights and pension benefits they seek, via enforcement of the [alleged

- 6 -

promise], core ERISA matters, *i.e.*[,] the administration of retirement rights and payment of pension benefits, would cease to be areas of exclusive federal regulatory concern." **Barnett**[, 38 A.3d] at 781. The [C]ourt further explained: "[I]f [the employees] were to acquire retirement rights and pension payments under Pennsylvania's common law of contracts, rather than pursuant to the terms of the ERISA plan which provides them with any such rights in the first place, the basic thrust of Section 514(a), to secure a unified body of federal benefits law that avoids subjecting a plan administrator to differing and possibly conflicting substantive state standards for determining entitlement to ERISA rights and benefits, would be subverted." **Id.** In the case *sub judice*, Plaintiffs' claims are based on both common law contract principles and state law under the WPCL. **Both claims arise from the Benefit[s] Plan as "their source."** **Barnett**[, 38 A.3d] at 783. Analyzing and interpreting the Benefit[s] Plan under either theory would interfere with ERISA's goal of a nationally uniform plan administration. Additionally, examination of the "modification rights" in the Benefits Plan would require the court to interpret the specific provisions of the Benefit[s] Plan itself, which triggers ERISA preemption.

Trial Court Opinion, 2/12/16, at 5-6 (emphasis added).

Plaintiffs argue that

[a]lthough broad, ERISA preemption has limits. The mere existence of an ERISA plan does not, standing alone, lead to preemption of state law claims. For preemption to apply, the claims must have more than a tenuous or remote connection to an ERISA plan. Rather, the **source** of the claims must be the ERISA plan. Here, the source of [Plaintiffs'] claims is not [the Benefits P]lan; it is the Retirement Agreement[s]. This case is about Keystone's broken promise to **pay for 100% of the cost of** [Plaintiffs'] health care during their retirement [(*i.e.*, including reimbursement of all of Plaintiffs' out-of-pocket expenses related to their medical benefits)], not the type or amount of benefits they should receive. The trial court failed to make that crucial distinction ….

**Id.** at 10-11 (emphasis in original, paragraph break omitted); **see also id.**

at 16 (citing **Aetna Life Ins. Co. v. Huntingdon Valley Surgery Ctr.**,

2015 U.S. Dist. LEXIS 57061, *16, 2015 WL 1954287 (E.D. Pa. 2015) (stating that "the mere fact that an employee benefit plan is implicated in the dispute is not dispositive of whether the [plaintiff's] breach-of-contract claims are preempted" by Section 514(a)) (citation, ellipses and quotation marks omitted)); *see also Pappas v. Asbel*, 768 A.2d 1089, 1092 (Pa. 2001) (stating that ERISA "preemption does not occur … if the state law has only a tenuous, remote, or peripheral connection with covered plans." (citation omitted)). Plaintiffs urge that, contrary to the trial court's determination, "[t]here was no need for the trial court to interpret the language of the [Benefits Plan] to determine whether Keystone has breached the *Retirement Agreements*." Brief for Appellants at 17 (emphasis in original); *see also id.* at 21 (asserting that "Keystone's liability to [Plaintiffs] is based on the promises it expressly made in the Retirement Agreements, not whatever may be stated in its ERISA [Benefits P]lan documents." (emphasis omitted)); Reply Brief for Appellants at 1 (asserting that "[i]n short, Keystone has a dispute with [Plaintiffs] about the interpretation of the Retirement Agreements. It is axiomatic that the meaning of the Retirement Agreements, or the particular choice of words, is a matter of contract interpretation under Pennsylvania law."). Finally, Plaintiffs argue that contrary to the trial court's determination, "[t]he purported 'modification rights' buried in a [] [Benefits P]lan document are irrelevant to the question of whether Keystone has reneged on its promise in

the Retirement Agreements to 'maintain' the status quo by paying the entire cost of [Plaintiffs'] health benefits during their retirement." Brief for Appellants at 21 (emphasis omitted).

We agree with Plaintiffs that the trial court erred in ruling that Plaintiffs' state law claims "arise from the Benefit Plan as 'their source.'" Trial Court Opinion, 2/12/16, at 6. To the contrary, the claims arise out of the Retirement Agreements. Although the Benefits Plan undisputedly provides health care benefits covered by ERISA,[4] the Retirement Agreements are separate contracts, which merely set forth Plaintiffs' claimed right to **continue** receiving no-cost health care benefits, rather than provide new benefits covered under ERISA. When Keystone entered into the Retirement Agreements with Plaintiffs in 2011, Keystone covered **all of** Plaintiffs' existing health care expenses. In the Retirement Agreements, Keystone agreed to "**maintain** [Plaintiffs'] existing health care benefits[,]" and those of their qualified dependents, for life. Accordingly, determining Keystone's liability for Plaintiffs' claims turns on Keystone's disputed contractual obligation under the separate Retirement Agreements to continue to pay for all of Plaintiffs' health care expenses, which claims are properly enforced under state law and not Section 514(a). In this regard, we are persuaded by Plaintiffs' following argument:

---

[4] Plaintiffs' claims are not premised on a challenge implicating the administration of the Benefits Plan, or the actual benefits provided under the Benefits Plan.

> The "true essence of the promise" made by Keystone is clear:  to maintain the status quo by paying for the entire cost of [Plaintiffs'] health benefits[,] including the cost of the insurance and any co-pays, deductibles or other out-of-pocket expenses they might incur, **regardless** of what health benefit scheme Keystone later chose to offer other employees or retirees.

Brief for Appellants at 18 (emphasis in original) (quoting **Barnett**, 38 A.3d at 780-81 (stating that "the application of Section 514(a) in the instant case turns on the true essence of the promise allegedly made by [defendant/employer], which forms the foundation of [plaintiffs'/employees'] state law contract claim.")).

Moreover, we are unpersuaded by Keystone's argument that "[b]ecause a review of the [] Benefits Plan is required to determine what the 'existing health care benefits' are (*i.e.*, the 'costs'), [Plaintiffs'] claims unquestionably 'relate to' an ERISA benefit plan and therefore are preempted under Section 514(a) of ERISA."  Brief for Keystone at 13.  In determining whether the Retirement Agreements obligated Keystone to continue paying for all of Plaintiffs' health care expenses, it is unnecessary for a court to look to the Benefits Plan to determine what Plaintiffs' existing out-of-pocket costs were; they were undisputedly zero.  Equally irrelevant is the matter of the precise types of health care benefit expenses that Keystone covered on behalf of Plaintiffs under the Benefits Plan, as Keystone covered **all of** their expenses.

Moreover, although the trial court opined that it would have to "analyze and interpret" the Benefits Plan to determine Plaintiffs' rights under

the Retirement Agreements, the court did not adequately explain why this is the case. The trial court's only explanation offered was its conclusory assertion that "examination of the 'modification rights' in the Benefits Plan would require the court to interpret the specific provisions of the Benefit[s] Plan itself, which triggers ERISA preemption." Trial Court Opinion, 2/12/16, at 6. We, however, fail to discern from the record why an examination into any purported modification rights in the Benefits Plan documents was necessary or germane to Plaintiffs' claim of Keystone's breach of the Retirement Agreements. Indeed, a review of the Retirement Agreements reveals no support for Keystone's assertion that any Benefits Plan modification provision (purportedly giving Keystone the "right to modify the costs and payments required of [Benefits Plan] participants, as well as any [] Benefits Plan terms" – **see** n.3, **supra**) was incorporated into the Retirement Agreements. The only "modification rights" that Keystone reserved in the Retirement Agreements was the right to modify the age and service

requirements necessary for retiree health care benefits eligibility.[5]  It is undisputed that each of the Plaintiffs has satisfied the age and service requirements necessary to receive the health care benefits, and the modification language did not require the trial court to look to the Benefits Plan to determine Plaintiffs' rights under the Retirement Agreements.

We additionally determine that the trial court misapplied the **Barnett** decision in ruling that Plaintiffs' claims were preempted by section 514(a). Unlike the situation in **Barnett**, where the Supreme Court concluded that the employer's ERISA pension plan was the "source" of the employees' breach of contract claim, which the trial court must analyze to determine the employees' ERISA retirement and pension rights, here, there was no need for the trial court to look to the Benefits Plan, and the source of Plaintiffs' claims was the Retirement Agreements.  In so deciding, we are persuaded by Plaintiffs' following argument:

> Keystone was already providing [Plaintiffs] with zero-cost health benefits when it promised[, in the Retirement Agreements,] to "maintain [Plaintiffs'] existing health care benefits" during their retirement.  All Keystone needs to do to honor the Retirement Agreement[s] is to continue its funding and reimbursement of [Plaintiffs'] medical costs out of its general assets (not [Benefits

---

[5] Plaintiffs attached to their Complaint two virtually identical versions of the Retirement Agreements.  One was between McGarvie and Keystone, and contained the medical benefits provision.  The other version, which was signed by Coggins, Bernard, Horton, and Vantine, also contained the medical benefits provision, with the addition of the following language (hereinafter "the modification language"), which is contained within the same provision: "Eligibility for any retiree medical benefits shall require full compliance with any age and service requirements, as such requirements may be modified by Keystone generally."  Complaint, Exhibit B (Retirement Agreement), ¶2(a).

P]lan assets). There is no eligibility question or calculation needed to determine the amount of out-of-pocket costs [Plaintiffs] had to absorb (which was zero).

Brief for Appellants at 15-16; *see also id.* at 16 (quoting and distinguishing *Barnett*, 38 A.3d at 781, by stating that, here, "[t]he trial court could 'determine precisely what [Plaintiffs] claim they were promised and … precisely what they seek to recover' from the Retirement Agreements."). Moreover, unlike in *Barnett*, where the employees' breach of contract claim was based upon an alleged oral promise by an agent of the employer concerning ERISA pension plan benefits, here, Plaintiffs' claims are based on an independent written contract, which nowhere mentions the Benefits Plan.

Finally, we observe that the federal district court in this action, in ruling that there was no complete ERISA preemption under Section 502(a), opined that

Keystone itself did not regard the Retirement Agreements to be ERISA plans at the time of drafting, as exemplified by the following provision in two of the three Retirement Agreements:

The law of the Commonwealth of Pennsylvania shall govern the construction and validity of this Agreement. Any disputes or claims of any nature arising out of or in any way related to this Agreement or Employee's employment by Keystone shall be submitted to the Court of Common Pleas of Montgomery County, Pennsylvania, and Employee agrees and submits to the exclusive jurisdiction of the Court of Common Pleas of Montgomery County.

If these [Retirement A]greements were completely preempted by ERISA, as [Keystone] [] chooses to argue, it would be impossible for [] Plaintiffs to submit to exclusive jurisdiction in a Pennsylvania state court. This cannot control the jurisdictional

analysis, but is certainly relevant to the [p]arties' intent and state of mind at the time of drafting.

***Coggins***, 111 F. Supp. 3d at 639.  We are persuaded by the federal court's rationale, which applies equally to the instant appeal.

Based on the foregoing, we conclude that the trial court erred by determining that Plaintiffs' state law claims are preempted by Section 514(a) of ERISA.  Moreover, Plaintiffs' claim that the language of the Retirement Agreements (*i.e.*, wherein Keystone agreed to "maintain [Plaintiffs'] existing health care benefits") contractually obligated Keystone to pay for all of their health care benefit expenses for life, and Keystone's dispute thereof,[6] constitutes a material issue of fact that the trial court should have permitted to be litigated.  ***See Coleman***, ***supra***.  Therefore, the trial court erred in ruling that Keystone was entitled to judgment as a matter of law.  Accordingly, we reverse the trial court's Order granting Keystone's Motion for Judgment on the Pleadings and remand for further proceedings consistent with this Memorandum.

Order reversed.  Superior Court jurisdiction relinquished.

---

[6] ***See***, ***e.g.***, Brief for Keystone at 13 (pointing out that "nowhere in the actual language of the Retirement Agreements does it say that Keystone will provide continued medical benefits 'at no cost' to [Plaintiffs].  Rather, Keystone merely agreed to maintain 'existing health care benefits' ….").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2016